**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

RANDSTAD LIFE SCIENCES, a division of RANDSTAD PROFESSIONALS US, LP, a Delaware limited partnership,

Plaintiff,

v.

JANE PONDEL, an individual, and PHARMASOURCE GROUP, INC., an Illinois corporation,

Defendants.

Case No. ____________________

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Randstad Life Sciences, a division of Randstad Professionals US, LP ("Randstad"), by and through its undersigned attorneys, alleges as follows for its Complaint against Defendants Jane Pondel ("Pondel") and PharmaSource Group, Inc. ("PharmaSource") (jointly, "Defendants"):

**NATURE OF THE ACTION**

1. This is an action for injunctive and other relief arising out of Defendant Pondel's violation of contractual obligations that she owes to Randstad and Defendant PharmaSource's tortious interference with those contractual obligations.

2. More specifically, Pondel, a former top recruiter for Randstad, is party to an Employee Non-Competition and Confidentiality Agreement for Illinois ("Agreement") that she

executed at the outset of her employment with Randstad.[1] By executing the Agreement, Pondel obtained employment with Randstad and access to Randstad's confidential information, talent, customer relationships and goodwill.

3. In consideration of her employment with Randstad and her access to Randstad's confidential information, talent, customer relationships and goodwill, Pondel agreed by executing the Agreement that, among other things, she will keep Randstad confidential information secret and she will not compete with Randstad for 18 months following termination of her employment.

4. Effective June 6, 2016, Pondel voluntarily terminated her employment at Randstad. Randstad recently learned that Pondel is working for PharmaSource Group, Inc. ("PharmaSource"), a direct competitor of Randstad, and, upon information and belief, is performing job duties and responsibilities for PharmaSource that are substantially identical to the duties Pondel performed for Randstad in the exact same geographic area.

5. PharmaSource, formed by ex-Randstad executives Victoria Stumpf and Melissa Beauchamp, knew full well that Pondel owed post-termination obligations to Randstad. Despite such knowledge, PharmaSource hired away Pondel and knowingly directed Pondel to perform tasks that are in direct violation of Pondel's obligations to Randstad.

6. Pondel's actions are in clear violation of her Agreement with Randstad. Consequently, Randstad now brings suit against Pondel for breach of the Agreement and against PharmaSource for tortiously interfering with Randstad's contractual rights. In doing so,

[1] Pondel was initially hired by Vedior North America LLC which was converted into Randstad Professionals US, LP in 2008. Per Section 10 of the Agreement, the rights and obligations under the Agreement inure to the benefit of and shall be binding upon, Randstad.

Randstad requests that this Court enter an order enjoining Pondel from continuing her knowing and intentional breach of her Agreement, and award Randstad compensatory and punitive damages for Defendants' intentional and illegal acts.

## THE PARTIES AND RELEVANT PERSONS

7. Randstad is a Delaware limited partnership with its principal place of business located in Atlanta, Georgia. No partner of Randstad is a citizen of Illinois.

8. Pondel is an individual who, upon information and belief, is a citizen of the State of Wisconsin and resides at 5335 N Berkley Blvd, Whitefish Bay, Wisconsin.

9. Upon information and belief, PharmaSource is an Illinois corporation with a principal place of business in Illinois.

## JURISDICTION AND VENUE

10. The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action and controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs.

11. This Court has personal jurisdiction over Pondel because, on behalf of Randstad, she placed talent candidates with Randstad customers located in the Midwest region, including primarily in the Greater Chicago area, and is now competing against Randstad, in violation of her Agreement, in the Greater Chicago area. This Court has personal jurisdiction over PharmaSource because it is a citizen and resident of Illinois. Venue is proper in the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Randstad's claims occurred in this District.

## BACKGROUND

### Randstad's Business

12. Randstad is a nationwide leader in staffing and recruiting talent for leading life sciences and biopharma companies throughout the United States. Randstad finds top talent ("Talent") for roles in biopharma, chemical and cosmetics, food, manufacturing and testing, medical device, nutriceauticals and pharma companies ("Customers").

13. Randstad's services include recruitment, consultation, project management, outsourcing, and account management.

14. The staffing industry is a highly competitive, specialized business that is relationship-driven between Customers, Talent, and Randstad's sales force. Through decades of hard work, dedication, innovation and investment, Randstad is an industry leader in the field of life sciences and biopharma staffing.

15. Randstad invests heavily in developing and maintaining Customer relationships and in attracting and retaining top employees and Talent for both its internal operations and for assignments with its Customers.

16. Randstad's success in the highly competitive life sciences and biopharma staffing industry is directly dependent on its staffing teams' knowledge of its Customers' needs and requirements and Randstad's ability to provide top quality Talent to its Customers. Similarly, Randstad must provide top quality job placements to its Talent.

17. To meet its Customers' expectations and needs, Randstad developed and maintains, at great expense, valuable and long-standing working relationships and substantial goodwill with its Talent and Customers.

18. Randstad reasonably expects that its long-standing Customer relationships will continue into the future.

19. Randstad's employees receive substantial training, information, business contacts and other advantages that provide Randstad with a competitive advantage in the marketplace.

20. Pondel, through her employment with Randstad, gained access to and unique knowledge of Randstad's trade secrets and other confidential and proprietary information, including, without limitation, information relating to Randstad's business strategies, finances, methodologies, processes, operations, pricing, Customers, employees, and information about its Talent and Talent candidates, such as their availability, contact information, salary requirements, skills, and performance history ("Confidential Information").

21. The Confidential Information to which Pondel had access during her employment with Randstad is critical to Randstad's competitive position in the life sciences and biopharma staffing industry.

22. Randstad developed such Confidential Information at significant expense and effort over a number of years, such information is not generally available to the public or Randstad's competitors, and Randstad derives economic value from this information.

23. Randstad also takes reasonable efforts to maintain the confidentiality of such information, including having its employees with access to such information sign confidentiality agreements and use password protected computers and password protected log-ins to access Randstad's databases.

24. If Randstad's Confidential Information were to fall into the hands of a competitor, Randstad's competitive position would be severely harmed, and the competitor would be able to

trade on many years' worth of valuable accumulated knowledge. Likewise, if a former employee, such as Pondel, retained Randstad's Confidential Information after her employment ended, and she used or disclosed the Confidential Information while working for a competitor, such as PharmaSource, Randstad's competitive position would be seriously harmed and both Pondel and PharmaSource would have an unfair competitive advantage.

**Pondel's Employment at Randstad**

25. On July 30, 2007, Pondel became employed as a recruiter by Vedior North America LLC d/b/a Delta Pharma, Inc. ("Vedior"). As a condition of Pondel's employment at Vedior, she was required to enter into the Agreement. Section 10 of the Agreement provides that the Agreement inures to the benefit of, and shall be binding upon, the successors and assigns of Vedior. (*See* Agreement, attached as Exhibit A hereto.)

26. On or about September 22, 2008, Randstad filed with the Delaware Secretary of State's office a Certificate of Conversion of Vedior North America LLC from a limited liability company to a limited partnership named Randstad Professionals US, LP. The effective date of the Certificate of Conversion was September 30, 2008. (*See* Certificate of Conversion, attached as Exhibit B hereto.)

27. Under her Agreement, Pondel acknowledged that she would be provided access to Confidential Information, which includes, but is not limited to, Randstad's "information and notes regarding customers, candidates and consultants and their resumes (placed, active and inactive), job orders from customers and financial and pricing information of the Company." (Agreement, § 3.)

28. Pondel agreed that both during and after her employment ended she would not use any Confidential Information for herself or others or disclose or communicate any Confidential Information to any third party for any purpose whatsoever without the company's express prior written consent. (*Id*.)

29. Pondel acknowledged that any such disclosure of Confidential Information is likely to cause irreparable harm and financial loss to the company. (*Id*.)

30. Pondel further agreed that in consideration of her access to Randstad's Confidential Information, Talent and Customers, Pondel would not for a period of 18 months following termination of her employment: (a) directly or indirectly engage in providing temporary and/or permanent clinical research, scientific and information technology employee placement and related services, within a radius of 50 miles of any office or area where Pondel was assigned to work during her employment; and (b) directly or indirectly solicit, provide services to, or attempt to solicit or provide services to, any of the company's current or prospective customers at the time of termination. (*Id*. at § 4.)

31. Pondel agreed and acknowledged that Randstad will suffer irreparable injury if she breaches the Agreement and agreed to indemnify Randstad for all reasonable legal fees and costs incurred in enforcing the Agreement. (*Id*. at § 9.)

32. During her employment at Randstad, Pondel rose to become among Randstad's top producers and was considered a driving force for Randstad's Midwest accounts. She received substantial commissions for placements she made at Randstad's Midwest Customers, including several key Customers located in the Greater Chicago area.

33. While Pondel often worked from her home in Wisconsin, at all times Pondel performed recruiting services on behalf of Randstad's Deerfield, Illinois office and performed recruiting services in the Midwest region, including in the Greater Chicago area. During her employment with Randstad, she held herself out as an employee of Randstad's Deerfield, Illinois office in business-related emails she sent from her Randstad email account.

**Pondel Breaches Her Obligations to Randstad**

34. On or about June 2, 2016, Pondel abruptly gave Randstad notice that she was terminating her employment.

35. Randstad since learned that Pondel was recruited by Victoria Stumpf and Melissa Beauchamp to join their newly-formed company, PharmaSource.

36. PharmaSource, upon information and belief, is engaged in the exact same business as Randstad - life sciences and biopharma staffing and in the exact same geographic territory serviced by Randstad's Deerfield, Illinois office.

37. Upon information and belief, PharmaSource solicited and hired Pondel to exploit Pondel's knowledge of Randstad's Confidential Information and her substantial relationships with Randstad's Talent to unlawfully steal Randstad's Confidential Information, Talent, and Customers for PharmaSource.

38. Pondel's employment at PharmaSource threatens Randstad with the loss of its Confidential Information, Talent and Customer relationships serviced by Pondel and those relationships Pondel knew of through her Randstad employment.

39. Indeed, Randstad learned that on her last day of employment at Randstad, Pondel forwarded a Talent candidate's resume and a new Talent candidate referral she received through

her Randstad email address to her personal email account. She promised to reach out to the referral directly via LinkedIn rather than logging the new referral in Randstad's database and referring her to another Randstad recruiter. (Emails attached hereto as Exhibit C.)

40. Pondel would have no reason to forward emails about the Talent candidates to her personal email account except for the purpose of soliciting the Talent to be placed with customers on behalf of PharmaSource.

**COUNT I**
**Breach of Contract vs. Pondel**

41. Randstad repeats and realleges each and every allegation contained in paragraphs 1 through 40 of the Complaint, as if fully set forth herein.

42. On or about July 30, 2007, Pondel entered into her Agreement with Vedior.

43. On or about September 22, 2008, Randstad filed with the Delaware Secretary of State's office a Certificate of Conversion of Vedior North America LLC from a limited liability company to a limited partnership named Randstad Professionals US, LP. The effective date of the Certificate of Conversion was September 30, 2008. Randstad thereby became Vedior's successor in interest with respect to the rights and obligations under the Agreement.

44. Randstad is entitled to enforce its rights under the Agreement.

45. The Agreement is a valid and enforceable contract.

46. Under the Agreement, Pondel promised, for a period of 18 months following the termination of her employment with Randstad, to not compete with Randstad within 50 miles of any office or area from which she performed services for Randstad.

47. The post-termination covenants found in the Agreement are reasonable in scope and duration, and are necessary to protect Randstad's legitimate business interests in its confidential information, goodwill, and longstanding Talent and Customer relationships.

48. Pondel's employment terminated with Randstad on June 6, 2016.

49. Based upon her publicly accessible LinkedIn profile, Pondel is now working for PharmaSource and, upon information and belief, performing, or about to perform, job duties and responsibilities on behalf of PharmaSource that are directly competitive to the job duties and responsibilities she performed on behalf of Randstad in the Midwest region, including the Greater Chicago area, and from a location that is within 50 miles of Randstad's Deerfield, Illinois office, where Pondel was assigned during her employment.

50. Randstad has performed all of the duties and obligations it owes Pondel under the Agreement.

51. Upon information and belief, Pondel breached the Agreement, and continues to breach the Agreement, by, among other things, competing with Randstad on behalf of PharmaSource within 50 miles of Deerfield, Illinois.

52. Indeed, on Pondel's LinkedIn profile, she identifies the Greater Chicago area as the location in which she is performing services on behalf of PharmaSource. (Pondel's LinkedIn profile attached hereto as Exhibit D.)

53. Randstad will incur significant damage as a result of Pondel's breach of the Agreement. Pondel's illegal competition with Randstad will damage Randstad's goodwill, reputation, Talent and Customer relationships, Confidential Information, and other legitimate

business interests. Pondel's actions threaten more than $75,000.00 in damages to Randstad's business.

54. Randstad has no adequate remedy at law and, unless injunctive relief is granted, Randstad will continue to be irreparably harmed by Pondel's breach of her Agreement in a manner that is not fully compensable by money damages.

55. Randstad therefore requests that this Court grant injunctive relief against Pondel that prohibits Pondel from a) using Randstad confidential information, b) soliciting Randstad's Talent, c) soliciting Randstad's Customers, and d) competing with Randstad by providing placement services within 50 miles of Deerfield, Illinois.

56. Finally, and pursuant to Section 9 of the Agreement, Randstad is entitled to recover the attorneys' fees and costs Randstad incurs in connection with its enforcement of the Agreement.

**COUNT II**
**Tortious Interference with Contractual Relationship vs. PharmaSource**

57. Randstad repeats and re-alleges each and every allegation contained in paragraphs 1 through 56 of the Complaint, as if fully set forth herein.

58. Randstad's Agreement with Pondel is a valid and enforceable contractual relationship.

59. Upon information and belief, PharmaSource knew of Pondel's contractual relationship with Randstad because, among other things, PharmaSource's principals, Stumpf and Beauchamp, are former Randstad employees and know that post-termination restrictive covenants are widely used by both Randstad and in the staffing industry.

60. Moreover, on July 25, 2016, Randstad provided PharmaSource with a copy of Pondel's Agreement. Thus, by no later than July 25, 2016, PharmaSource knew that Pondel was prohibited from competing with Randstad for a period of 18 months from June 7, 2016.

61. PharmaSource tortiously interfered with Randstad's contractual relationship with Pondel by inducing and incentivizing Pondel to breach the contractual obligations under the Agreement that she owes Randstad, including her obligation to not compete with Randstad for a period of 18 months after her employment with Randstad ended and within 50 miles of the Midwest region which she covered, including the Deerfield office to which she was assigned.

62. PharmaSource's conduct was neither privileged nor justified.

63. As a proximate result of PharmaSource's conduct, Randstad is damaged and will continue to be damaged.

**WHEREFORE**, Plaintiff Randstad Life Sciences, a division of Randstad Professionals US, LP, respectfully requests that this Court:

1. Enter an injunction enjoining and restraining Pondel, and her agents, representatives, associates, employees, and all those acting in concert or participation with her, from:

(a) directly or indirectly, engaging in any activities competitive with those she performed on behalf of Randstad, including providing temporary and/or permanent clinical research, scientific and technology employee placement and related services, within a 50 mile radius of Four Parkway North, Suite 120, Deerfield, IL 60015 for a period of 18 months after judgment is entered;

(b) using any Randstad confidential information for her own benefit and from disclosing Randstad confidential information to anyone not authorized to receive the information; and

(c) directly or indirectly, soliciting temporary and/or permanent clinical research, scientific and technology employee placement and related services from any existing or prospective Randstad customer she serviced or knew of through her employment with Randstad.

2. Enter an order requiring Pondel to return all Randstad confidential information and property in her possession, custody or control to Randstad;

3. Enter judgment against Pondel and PharmaSource for compensatory damages in an amount to be determined at trial;

4. Enter judgment against PharmaSource for punitive damages in an amount to be determined at trial;

5. Award Randstad the costs and expenses, including reasonable attorneys' fees, Randstad incurs as a result of Pondel's breach of her Agreement; and

6. Award Randstad such other relief as the Court may deem just and proper.

**Jury Trial Demanded**

Dated: August 10, 2016

Respectfully submitted,

By: /s/Marcus L. Mintz
*Attorneys for Plaintiff Randstad Life Sciences, a division of Randstad Professionals US, LP*

Marcus L. Mintz
Illinois State Bar No. 6290255
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5000
mmintz@seyfarth.com

Daniel P. Hart(Georgia Bar No. 141679)
(to be admitted *pro hac vice*)
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309-3958
dhart@seyfarth.com

*Attorneys for Plaintiff Randstad Life Sciences, a division of Randstad Professionals US, LP*